IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | Case No. CR13-1010 |
| vs. | | ORDER FOR PRETRIAL DETENTION |
| DANIEL LEE CAMPBELL, | | |
| Defendant. | | |

On the 12th day of July 2013, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial.[1] The Government was represented by Assistant United States Attorney Daniel C. Tvedt. The Defendant appeared personally and was represented by his attorney, Michael M. Lindeman.

## I. RELEVANT FACTS AND PROCEEDINGS

On June 27, 2013, Defendant Daniel Lee Campbell was charged by Indictment (docket number 2) with being a felon in possession of a firearm. At the arraignment on July 1, 2013, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on September 3, 2013.

At the hearing, Dubuque Police Officer Nick Schlosser testified regarding the circumstances underlying the instant charge. On June 10, 2013, at approximately 9:00 p.m., law enforcement was alerted to a shooting in the area of Iowa Street in Dubuque, Iowa. Officers investigated, but did not locate anyone.

At approximately 11:06 p.m., law enforcement received information about a man with a gun on Bluff Street. The individual was described as being a light-skinned black

---

[1] Defendant waived his right to a hearing at the initial appearance, while reserving his right to ask for a hearing on a later date.

1

male with dreadlocks, and wearing a white tee-shirt and pajama pants. The first officer on the scene saw two subjects walking 3 blocks east of Bluff Street. One of the subjects matched the description of the man with the gun, later identified as Defendant. The officer stopped his police car and approached Defendant on foot. Defendant took off running. The officer observed two weapons in Defendant's waistband as he fled. The officer called for assistance, reported observing two weapons, and then pursued Defendant on foot.

A second officer responded to the pursuit and attempted to cut Defendant off with his vehicle. Defendant was able to get past the police car and ran down an alley. The second officer exited his vehicle and saw Defendant throw one gun away in the alley near a dumpster. About 50 feet later, Defendant fired one round at the officers with the second gun, and then threw the gun over a fence into a church courtyard. Both officers chased Defendant for 2 more blocks, but then lost sight of him. Officers later found Defendant hiding behind a restaurant in the area where the pursuit occurred. When asked why he ran from officers, Defendant stated he thought they had an outstanding warrant for his arrest.[2]

According to the pretrial services report, Defendant is 29 years old. He was born in Milwaukee, Wisconsin. He moved to Dubuque when he was 10 years old, and has remained in Dubuque since that time. Defendant's mother resides in Dubuque, where he has lived with her for the past several years. Defendant's mother told the pretrial services officer that if released, Defendant could return to her residence to live. Defendant also has a sister who resides in Dubuque. Defendant has never been married, but has one child with his girlfriend. Both she and their child also reside in Dubuque.

Defendant has been employed as a cook at Courtside Bar and Grill in Dubuque since 2008. The owner of the restaurant told the pretrial services officer that Defendant is a "great employee" and could return to his job if released. Defendant is in good physical health. He reports no present or past mental or emotional health concerns. Defendant told

---

[2] Defendant was incorrect. No outstanding arrest warrant existed.

the pretrial services officer that he rarely consumes alcohol and has not used marijuana since 2006.

Defendant has an extensive criminal record. On August 5, 2000, at age 17, Defendant was charged and later convicted of trespass with injury.[3] On August 23, 2000, Defendant was charged and later convicted of possession of marijuana. He was sentenced on both charges on the same date. He was given suspended jail terms and 2 years probation on each charge.

On May 5, 2002, at age 18, and while on probation, Defendant was charged with disorderly conduct and possession of alcohol under the legal age. The first charge was dismissed and Defendant was convicted of the second. On June 2, 2002, while on probation and while charges were pending, Defendant was charged and later convicted of interference with official acts causing injury.[4] On July 24, 2002, following these three arrests, a petition for probation violation was filed against Defendant in the 2000 trespass and possession charges.

On August 5, 2002, while on probation and while other charges remained pending, Defendant was charged with interference with official acts. That charge was ultimately dismissed. On November 25, 2002, while on probation and while charges remained pending, Defendant was charged with driving with a suspended license. The disposition of that charge is unknown. On December 9, 2002, again while on probation and charges were pending, Defendant was charged and later convicted of eluding. On December 22, 2002, while on probation and while other charges were pending, Defendant was charged with interference with official acts. That charge was ultimately dismissed. On December 30, 2002, following these four arrests, a second petition for probation violation was filed

---

[3] Prior to 2000, Defendant was arrested 9 times as a juvenile.

[4] When officers approached Defendant on this charge, he fled on foot before being caught and arrested. An officer was injured when Defendant resisted arrest.

against Defendant in the 2000 trespass and possession charges. On January 22, 2003, Defendant was sentenced on the eluding charge and was given a partially suspended jail sentence and 1 year of probation. He was also sentenced to 20 days in jail on the July and December 2002 probation violations.

On November 24, 2003, Defendant was charged and later convicted of driving with a suspended license, failure to have insurance, and fraudulent use of registration. On December 19, 2004, Defendant was charged with driving with a suspended license. That charge was ultimately dismissed. On August 13, 2005, Defendant was charged and later convicted of possession of marijuana. He was given a suspended jail sentence and 1 year of probation.

On June 23, 2006, Defendant was charged and later convicted in federal court with aiding and abetting the providing of a false statement to a federal firearms licensee. Defendant was sentenced to 21 months in prison and 3 years supervised release. On April 6, 2009, a supervised release violation was alleged against Defendant.[5] On April 22, 2009, Defendant's supervised release was revoked and he was sentenced to 10 months in prison and 2 years supervised release. On March 16, 2010, another supervised release violation was alleged against Defendant.[6] On March 23, 2010, Defendant's supervised release was modified and Defendant was required to reside at a residential re-entry center until August 6, 2010. Defendant's supervised release was terminated on February 7, 2012.

---

[5] It was alleged that Defendant violated the terms and conditions of his supervised release by (1) consuming alcohol, (2) associating with felons and persons involved in criminal activity, (3) frequenting a place where controlled substances were illegally sold, used, distributed, or administered, and (4) failing to comply with instructions from the probation office.

[6] It was alleged that Defendant violated the terms and conditions of his supervised release by (1) receiving disciplinary reports from a Dubuque residential facility, and (2) being arrested for driving with a suspended license.

4

On June 10, 2013, Defendant was charged in state court with going armed with intent, 2 counts of trafficking in stolen weapons, possession of a firearm by a felon, and interference with official acts. Following the indictment on the instant federal charge, these state charges were dismissed.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id*. at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id*. Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id*.

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized

involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

## B. Analysis

Turning to the facts in the instant action, Defendant is charged with being a felon in possession of a firearm. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(E).

Regarding the second step, the weight of the evidence against Defendant is strong. It is undisputed that Defendant is a convicted felon. On the night of June 10, 2013, law enforcement responded to reports of a shooting; however, no one involved in the reported shooting was found. Later, a man with dreadlocks, a white tee-shirt, and pajama pants was reported seen with a gun near where the earlier shooting was originally reported. Officers arrived on the scene and saw a man matching the description of the individual with a gun. The man was later identified as Defendant. One of the officers on the scene observed two firearms in Defendant's waistband. When the officer approached Defendant, he fled on foot. Another officer arrived on the scene and saw Defendant throw one gun away. Defendant then shot the second gun at the officers before throwing it over a fence into a church courtyard. Officers eventually located Defendant hiding nearby from where he had fled from police. Defendant admitted running from the police.

A felon in possession of firearms constitutes a danger to the community, particularly when the felon shoots one of the firearms at police officers, as Defendant did here. Defendant has an extensive criminal record with a history of committing additional offenses while on pretrial release and probation. Defendant also had his supervised release on a federal charge revoked once, and modified on another occasion. The Court has no confidence that Defendant would comply with the terms and conditions it would impose if he were released. Accordingly, there is no condition or combination of conditions that would assure the safety of the community if Defendant is released. Therefore, based on the serious nature and circumstances of the offense, his extensive criminal record, history of committing offenses while on pretrial release and probation, performing poorly on

supervised release, and firing a weapon at police officers while fleeing from them, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1.      The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2.      The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3.      On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4.      The time from the Government's oral motion to detain (July 1, 2013) to the filing of this Ruling (July 15, 2013) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 15th day of July, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

8