IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

UNITED STATES OF AMERICA,   )
                            )
            Plaintiff,      )   CR 13-1010
                            )
    VS.                     )   SENTENCING
                            )
DANIEL CAMPBELL,            )
                            )
            Defendant.      )


                    APPEARANCES:

ATTORNEY DANIEL C. TVEDT, Assistant US Attorney, 111
Seventh Avenue S.E., Box 1, Cedar Rapids, Iowa 52401,
appeared on behalf of the United States.

ATTORNEY MICHAEL M. LINDEMAN, Lindeman Law, 3500 F Avenue
N.W., Suite One, Cedar Rapids, Iowa 52405, appearing on
behalf of the Defendant.




                    SENTENCING HEARING,

held before the Hon. James E. Gritzner on the 18th day of

December, 2013, at 111 Seventh Avenue S.E., Cedar Rapids,

Iowa, commencing at 1:33 p.m.




        Patrice A. Murray, CSR, RPR, RMR, FCRR
            United States District Court
            111 Seventh Avenue S.E., Box 4
            Cedar Rapids, Iowa 52401-2101
                    (319) 286-2338

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 1 of 40

1                              INDEX

2      WITNESS              D          C          RD         RC

3      Jonathan Brokens    8          12

4      Alex Scott          13

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 2:13-cr-01010-CJW-MAR Document 55 Filed 04/17/14 Page 2 of 40

1                (The following was held in open court.)

2                THE COURT:  We are convened in the matter of

3    United States versus Daniel Lee Campbell, Criminal Number

4    13-1010, for purposes of sentencing, as a result of the

5    verdict of the jury on Count 1, possession of a firearm

6    by a felon.

7                Mr. Campbell, do you understand that you are

8    here now for sentencing as a result of the verdict?

9                THE DEFENDANT:  I do.

10                THE COURT:  Counsel, is there any legal

11    reason why sentence could not be pronounced today?

12                MR. TVEDT:  No, Your Honor.

13                MR. LINDEMAN:  No, Your Honor.

14                THE COURT:  I have reviewed the presentence

15    investigation report and related materials, the briefs of

16    counsel that have been filed, as well as the other

17    material.

18                Has the government had the opportunity to

19    review the presentence investigation report?

20                MR. TVEDT:  Yes, Your Honor.

21                THE COURT:  Do you find any factual error in

22    the report?

23                MR. TVEDT:  No.

24                THE COURT:  I understand you have some issues

25    with whether or not there should be some additions to the

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR  Document 55  Filed 01/17/14  Page 3 of 40

1 report.

2          MR. TVEDT:  Right, I think that matter has

3 been resolved here in the district court level recently

4 regarding the driving violations.

5          THE COURT:  Yes.

6          MR. TVEDT:  Judge Reade has ordered Probation

7 to start including what was listed as a traffic citation

8 number and not just a simple misdemeanor or felony

9 number, so those matters are now being incorporated in

10 presentence reports here in the Northern District.

11          THE COURT:  All right.  Mr. Lindeman, do you

12 need to make any record on that, in addition to prior

13 statements?

14          MR. LINDEMAN:  Not as to his supplement

15 provided by the US Attorney's Office in regards to those

16 driving charges.  Does the Court want me to address it

17 regarding the presentence report?

18          THE COURT:  Well, let me tell you,

19 Mr. Lindeman, that the driving charges are not going to

20 be material to anything that I do here today.  If there

21 is, in fact, a standard order in this district that the

22 material be included, then, that order should probably be

23 followed.  But for purposes of the sentencing today,

24 those charges will be meaningless to me.

25          MR. LINDEMAN:  That's what I thought, Your

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR  Document 55  Filed 01/17/14  Page 4 of 40

1  Honor.  That is correct.

2          THE COURT:  All right.  And, Mr. Lindeman,

3  have you had the opportunity to review the presentence

4  investigation report?

5          MR. LINDEMAN:  I have, Your Honor.

6          THE COURT:  Mr. Campbell, did you read the

7  presentence investigation report yourself?

8          THE DEFENDANT:  Yes, I have, Your Honor.

9          THE COURT:  You can stay seated, sir.  That's

10 just something we make lawyers do.

11          And have you had a full opportunity to confer

12 with Mr. Lindeman about the contents of the report?

13          THE DEFENDANT:  Yes, I have, Your Honor.

14          THE COURT:  All right.  Mr. Lindeman, do you

15 find any factual error in the report?

16          MR. LINDEMAN:  Other than what's been noted

17 in my objections regarding the facts of the incident, no,

18 Your Honor.

19          THE COURT:  And I understand the nature of

20 the objections to basically be preserving your position

21 for purposes of appeal?

22          MR. LINDEMAN:  That's a correct statement,

23 Your Honor.

24          THE COURT:  I mean, we all understand that

25 that is the record in this case to date, correct?

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR  Document 55  Filed 01/17/14  Page 5 of 40

```
1              MR. LINDEMAN:  Correct, Your Honor.
2              THE COURT:  All right.  I will accept the
3    presentence investigation report as factual findings for
4    our purposes here today, with the understanding that
5    there will be some amendment to the report pursuant to
6    the local rule here.
7              That brings us to the issue of the
8    calculation of the guideline range, and I know that there
9    are some objections on that issue.  It appears,
10   Mr. Lindeman, that you object to the enhancement for
11   possession of the firearm in connection with another
12   felony offense.
13             MR. LINDEMAN:  That's a correct statement,
14   Your Honor.
15             THE COURT:  I'm going to list them first, and
16   you can tell me if I missed any.
17             Whether the defendant created a substantial
18   risk of harm to law enforcement officers during flight.
19             And then the third one was whether the prior
20   convictions for driving suspension should be included.  I
21   think we've resolved that.  It's not material today, but
22   the other two are still at issue.
23             MR. LINDEMAN:  Yes, Your Honor.
24             THE COURT:  And does that -- do those two
25   summarize the objections that need to be addressed?
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR  Document 55  Filed 01/17/14  Page 6 of 40

```
 1              MR. LINDEMAN:  It does, Your Honor.

 2              THE COURT:  All right.  And I have read your

 3     memorandum.  Is there additional argument?  Let's take

 4     them one at a time.

 5              First of all, with regard to possession of

 6     the firearm in connection with another felony offense,

 7     any additional argument on that?

 8              MR. LINDEMAN:  No, Your Honor.

 9              THE COURT:  From the government?

10              MR. TVEDT:  Your Honor, I'm not sure if you

11     would like to have the government present the testimony

12     of the two officers about being placed in fear during

13     that proceeding.  I think it's pretty evident from the

14     testimony that they were -- being shot at put them in

15     fear.  But if we need their testimony, I have them here.

16     Also, as victims, they may want to allocute at some point

17     during the course of this proceeding.

18              THE COURT:  It somewhat depends upon the

19     nature of what they are presenting today.  If they were

20     simply providing a victim statement, which they can

21     certainly provide a little bit later in the process, then

22     they need not be under oath.  They simply can make their

23     statement.  If you have evidence that needs to be

24     considered that's in addition to what record has already

25     been made, then they should be sworn and take the stand.
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 04/17/14   Page 7 of 40

1          MR. TVEDT:  Your Honor, I will call Jonathan

2   Brokens to the stand.

3          THE COURT:  All right.  Officer, this

4   gentleman will place you under oath.

5                    JONATHAN BROKENS,

6   called as a witness, being first duly sworn or affirmed,

7   was examined and testified as follows:

8          THE COURT:  Take a seat, please.

9                    DIRECT EXAMINATION

10  BY MR. TVEDT:

11  Q.     Can you just state your name and spell your last

12  name for the record?

13  A.     Jonathan Brokens, B-R-O-K-E-N-S.

14  Q.     Who do you work for?

15  A.     The Dubuque Police Department.

16  Q.     And you testified at the trial in this matter, did

17  you not?

18  A.     Yes.

19  Q.     And were you the first officer on the scene that

20  encountered the defendant on June 10, 2013?

21  A.     Yes.

22  Q.     Can you just remind us how you first spotted the

23  defendant?

24  A.     The officer that was on Bluff Street stated, when

25  he was talking to the complainant, stated that the two

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 8 of 40

```
1    subjects crossing 15th Street needed to be stopped.  I
2    was driving up 15th Street at that moment and saw the
3    subjects cross the street, turned on my red and blue
4    lights, and got out of the car and told them to come over
5    there.
6    Q.     So you were driving a squad car at that time?
7    A.     Yes.
8    Q.     Clearly marked Dubuque Police Department?
9    A.     Clearly marked, yes.
10   Q.     And you said you activated the lights?
11   A.     Yes.
12   Q.     Typical for squad cars?
13   A.     Yes.
14   Q.     How were you dressed that night?
15   A.     In my full Dubuque police-issued uniform.
16   Q.     And how far away did you get from the defendant
17   outside your vehicle?
18   A.     About 12 feet.
19   Q.     Was that corner well lit that he could see your
20   vehicle and how you were dressed?
21   A.     Yes.
22   Q.     And did the -- I think you testified at the trial
23   that the defendant ran from you?
24   A.     Yes, he did.
25   Q.     Did you actually see the firearms on that night?
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 9 of 40

1  A.     Yes.

2  Q.     How were you -- what were you feeling when you saw

3  the defendant with the two firearms?

4  A.     The nature of him running from us, anybody you

5  deal with that has a firearm that's fleeing, there's

6  always that element of danger that somebody could get

7  shot, especially if somebody is trying to flee and if

8  they get cornered, you know, it could be a lethal

9  situation.

10 Q.     Now, your partner or another squad car pulled up;

11 is that correct?

12 A.     Yes.

13 Q.     That was Alex Scott?

14 A.     Yes.

15 Q.     When the two of you were chasing the defendant

16 behind the alley, did -- were you and -- what were you

17 thinking about, whether or not you or your partner could

18 be shot?

19 A.     I was definitely thinking one of us could easily

20 be shot or the person running if he turned and challenged

21 us.  I was very scared, you know, at that point when we

22 saw the handguns, then when I saw the muzzle flash.

23 Q.     What did you do when you saw the muzzle flash?

24 A.     I remember hesitating a little bit, and I remember

25 looking down and, like, touching my chest to make sure I

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 10 of 40

1   wasn't hit.  And then I kept running.  I remember looking

2   at Alex, and he kept running.

3   Q.    Did that incident affect the way that you carry

4   out your position?

5   A.    Yes.

6   Q.    In what ways did it affect you?

7   A.    When a call comes out dealing with a firearm or

8   some kind of weapon, it just amplifies my, you know, my

9   senses.  I deal with them very differently now than prior

10   to that.  Prior to that night, I hadn't had a call like

11   this.

12   Q.    Do you feel under more stress when you hear a call

13   go out where a firearm might be involved?

14   A.    Yes, it immediately brings back that night.

15   Q.    What about when you approach vehicles, if you pull

16   anyone over?

17   A.    I'm constantly looking for hands.  A lot more

18   observant, I guess, now.

19   Q.    Did that affect your ability to sleep?

20   A.    Yeah, there was several nights where I didn't

21   sleep very well after the incident.

22   Q.    Did you get any type of counseling for this event?

23   A.    Yes, I did speak with a counselor.

24           MR. TVEDT:  No further direct, Your Honor.

25           THE COURT:  Cross-examination.

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 11 of 40

```
                        CROSS-EXAMINATION
```

1
2   BY MR. LINDEMAN:
3   Q.      Officer, when you saw the muzzle flash, were you
4   in a position to make an observation of the gun itself?
5   A.      I could tell it was in his right hand.  He had
6   already thrown the gun from his left hand.
7   Q.      Where was it in his right hand when the muzzle
8   flashed?
9   A.      It was over his shoulder.
10  Q.      And where were you?
11  A.      Back behind him a little ways.
12  Q.      So would his head or neck be blocking your view or
13  your ability to observe the gun itself?
14  A.      I could see the muzzle flash.  It happened fast.
15              MR. LINDEMAN:  Thank you.  Nothing further.
16              THE COURT:  Redirect.
17              MR. TVEDT:  Nothing, Your Honor.
18              THE COURT:  You may step down, Officer.
19              MR. TVEDT:  The United States calls Alex
20  Scott.
21              THE COURT:  While officer Scott is
22  approaching, counsel, just so I don't forget to clarify
23  this, you had prepared some exhibits attached to your
24  brief, but I assume that those have been resolved by our
25  prior discussion with regard to the underlying driving

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 12 of 40

1　offenses.

2　　　　　　　　MR. TVEDT:  Correct, Your Honor.

3　　　　　　　　THE COURT:  So you don't need to offer those

4　today?

5　　　　　　　　MR. TVEDT:  No, Your Honor.

6　　　　　　　　THE COURT:  All right.  Please come forward,

7　Officer.

8　　　　　　　　　　　　ALEX SCOTT,

9　called as a witness, being first duly sworn or affirmed,

10　was examined and testified as follows:

11　　　　　　　　THE COURT:  Take a seat, please.

12　　　　　　　　　　DIRECT EXAMINATION

13　BY MR. TVEDT:

14　Q.　　Please state your name and spell your last name

15　for the record.

16　A.　　Alex Scott, S-C-O-T-T.

17　Q.　　Who do you work for?

18　A.　　The Dubuque Police Department.

19　Q.　　And were you working on June 10, 2013, the

20　incident that was the subject of this trial?

21　A.　　Yes.

22　Q.　　And you, in fact, testified at the trial?

23　A.　　Yes.

24　Q.　　Again, just to refresh our memories, how did you

25　first come in contact or spot the defendant on that

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 13 of 40

 1   night?

 2   A.      I was initially in the area after the call was

 3   placed out.  Officer Brokens called out over the radio

 4   that he was stopping two individuals at 15th and Main.

 5   As he was calling that out, I -- where I was in my squad

 6   car, I could see him stopping his squad car and turning

 7   on the lights, and then the subject taking off, running

 8   from Officer Brokens.

 9   Q.      Where did you stop your vehicle?

10   A.      In the alley.  It would have been the alley

11   between Main and Iowa.

12   Q.      Did you stop -- where was the defendant when you

13   stopped your vehicle?

14   A.      Almost parallel to my driver's side door.

15   Q.      And again, what type of vehicle were you in?

16   A.      Dubuque squad car.

17   Q.      Plainly marked?

18   A.      Yes.

19   Q.      Light bar?

20   A.      Yes.

21   Q.      Were those activated?

22   A.      No.

23   Q.      And what were you wearing when you got out of the

24   car?

25   A.      My issued uniform from the police department.

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 14 of 40

```
 1   Q.      So he ran by your squad car as you pulled in?

 2   A.      Yes.

 3   Q.      And then, I think you testified at the trial that

 4   you saw the firearms?

 5   A.      Yes.

 6   Q.      What were you thinking when you saw the defendant

 7   run by with the handguns?

 8   A.      That this is the first time I know somebody is

 9   running from me and I can see they have a gun in their

10   hand.  I know they have a gun.

11   Q.      When you saw the defendant run by and you got out,

12   did you have any fear for your safety or that of your

13   partner?

14   A.      Yes.

15   Q.      Can you describe what you were thinking at that

16   point?

17   A.      My main concern was that John didn't get shot,

18   that he was behind me.  And I felt, if he turned to the

19   left, he was going to shoot John first, and I wasn't

20   going to let that happen.

21   Q.      Did you recall seeing the muzzle flash?

22   A.      Yes.

23   Q.      What were you thinking at that point?

24   A.      *I just got shot at.*  I -- that was -- the muzzle

25   flash stood out in my head before the sound did.  The
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 15 of 40

1   sound wasn't loud to me.  It was the muzzle flash that I

2   knew I got shot at.

3   Q.    Did you think that either you or John were shot?

4   A.    As I was running, I knew I wasn't on the ground

5   and I didn't feel pain so I must have not have been hit.

6   Q.    Were you again in fear of being hit while you were

7   chasing the defendant?

8   A.    Yes.

9   Q.    And has that event impacted the way you handle

10  your position?

11  A.    Yes.

12  Q.    And in what ways has it impacted you?

13  A.    I know now -- when a call goes out involving a

14  weapon or a firearm, I go through almost a hyper sense of

15  awareness.

16  Q.    Do you -- does your stress level rise when you

17  hear a call for -- where a gun is involved?

18  A.    Yes.

19  Q.    And can you describe maybe how that was -- how

20  that's different than the way it was before that night?

21  A.    Going to the call or when the call is over with,

22  for me, I'm sweating profusely.  It's -- just handles

23  differently; my body just handles it differently.

24  Q.    Do you react differently with anyone in your squad

25  car as to how to react to those events?

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 16 of 40

1   A.      Yes, I've had people riding with me.  Riders have

2   even made comments about when we have gotten calls

3   involving weapons, how I change into a different person.

4   My demeanor changes instantly.

5   Q.      How does it affect you any after work or when you

6   are not on duty?

7   A.      A little more jumpy, I should say.

8   Q.      More aware of your surroundings?

9   A.      Yes.

10                  MR. TVEDT:  Nothing else.

11                  THE COURT:  Cross-examination, Mr. Lindeman.

12                  MR. LINDEMAN:  No questions, Your Honor.

13                  THE COURT:  All right.  You may step down,

14  Officer.

15                  Any other evidence, Mr. Tvedt?

16                  MR. TVEDT:  No, Your Honor.

17                  THE COURT:  Mr. Lindeman, do you wish to

18  present any evidence?

19                  MR. LINDEMAN:  No, Your Honor.

20                  THE COURT:  All right.  All right.  Let's --

21  we've already indicated, with regard to the possession of

22  a firearm in connection with another felony offense,

23  you're relying on your memorandum.  Mr. Tvedt, did you

24  wish to make some additional argument on that issue?

25                  MR. TVEDT:  No, Your Honor.  I believe the

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 2:13-cr-01010-CJW-MAR  Document 55  Filed 01/17/14  Page 17 of 40

1    memorandum covers the 4-level adjustment in that case.

2              THE COURT:  Okay.  This response to this

3    particular enhancement, essentially, seemed to me a

4    disagreement with the verdict.  And the verdict is what

5    it is; and, therefore, the Court has an individual

6    convicted of possession of the firearm and the individual

7    being identified as the person who fired at the officers.

8    Therefore, the underlying offense, I think, clearly is

9    demonstrated in the record.  Therefore, the enhancement

10   for possession of the firearm in connection with another

11   felony offense is sustained in this record.

12             The next issue then is whether the defendant

13   created a substantial risk of harm to law enforcement

14   officers during the flight.  Again, it seemed to me your

15   argument, Mr. Lindeman, was essentially a disagreement

16   with the verdict, but do you wish to add anything further

17   to it?

18             MR. LINDEMAN:  Just what's been mentioned in

19   the brief, Your Honor, that this is a situation where it

20   could be double-counting in regards to the enhancement

21   with the prior felony.  Other than that, no, Your Honor.

22             THE COURT:  Response, Mr. Tvedt.

23             MR. TVEDT:  Your Honor, this would not be

24   double-counting.  They're both separately accounted for

25   within the guidelines or intended to be scored in this

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR  Document 55  Filed 01/17/14  Page 18 of 40

1   manner.  There is no double-counting.  Again, it's clear

2   from the testimony today that these officers were, in

3   fact, afraid of being hurt, injured -- seriously hurt or

4   injured in this incident.  And it was clear that, from

5   their -- the way they approached the defendant and the

6   vehicles and their clothing, that it was clear to anyone

7   that these would have been law enforcement officers

8   encountering the defendant on that night.

9           THE COURT:  All right.  Again, the Court

10  finds that the record amply supports the enhancement for

11  creating a substantial risk of harm to law enforcement.

12  Actually, this event created a substantial risk of harm

13  to more than just law enforcement, anybody else in the

14  area, and, in fact, the defendant, because under the

15  circumstances, the officers certainly would have been

16  well within their authority to return fire, but they did

17  not do that.  But in this particular situation, the

18  enhancement clearly is supported by the record and will

19  be applied by the Court.

20          Does that resolve the issues with regard to

21  the calculation of the guideline range?

22          MR. LINDEMAN:  On behalf of defendant, Your

23  Honor, yes.

24          MR. TVEDT:  Yes, Your Honor.

25          THE COURT:  All right.  This case presents

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 19 of 40

```
1    then with an offense level 26, a criminal history
2    category III, which provides the Court with a guideline
3    sentencing range of 78 to 97 months.
4              With that, then, Mr. Lindeman, your thoughts
5    as to what would be an appropriate sentence under the
6    circumstances.
7              MR. LINDEMAN:  Obviously, Your Honor, the
8    defendant at this time would respectfully pray to the
9    Court that the lower end of that guideline range be
10   imposed by the Court at this time, based upon the nature
11   of his -- the letters from his mother and some of his
12   background that I'll talk a little bit about in regards
13   to the argument at other areas, but also, this -- this
14   defendant was employed or has been employed and has been
15   going to school, and he was on a dean's list at some
16   point in time.  And for those reasons, Your Honor, we
17   would ask for the low end of that sentencing guideline.
18   Thank you.
19             THE COURT:  Well, this is your time to tell
20   me anything you want me to know about what should be the
21   sentence in this case.
22             MR. LINDEMAN:  Well --
23             THE COURT:  Please proceed.
24             MR. LINDEMAN:  Thank you, Your Honor.  And
25   again, I submitted some letters to the Honorable -- you
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 20 of 40

 1  last week from, a letter from his mother, just that he

 2  is -- he has some family support in the Dubuque area.

 3  His mother and fiancée are here today.  He has a child.

 4  He was working at the Courtside Restaurant, which was

 5  confirmed, and he's been a good employee.  And he was in

 6  school, and he was working towards a degree.  He was on

 7  the dean's list in 2010.  He's trying to straighten out

 8  his life.  He, unfortunately, ran from police that

 9  evening, which caused him to be here in court today, Your

10  Honor.  But essentially, that's our argument for the

11  Court.  Thank you.

12          THE COURT:  All right.  Mr. Campbell, you

13  have the right to speak to the Court yourself if you

14  want.  It is entirely up to you whether you do so, but if

15  you've got something you'd like to say, I'd be glad to

16  hear from you.

17          THE DEFENDANT:  Yeah, I mean, Your Honor,

18  being frank, like, this ain't -- I mean, I ain't here to

19  argue the conviction, the innocent or the guilty.  But I

20  still, you know, stand by my plea.  That's why I went to

21  trial.  Every time I've been in federal court -- I've

22  been here three times -- before Linda Reade, I accepted

23  responsibility for my actions.  I never once took any of

24  my other cases I ever had to trial.

25          Like -- I mean, unfortunately, I put myself

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 21 of 40

1    in a bad situation.  I ran from the police, which I

2    shouldn't have.  I didn't fire at the police, but like

3    you said, that ain't what we're here to discuss.  I do

4    apologize for running from the police.

5              I am asking for the low end.  At the end of

6    the day, like, I'm at the mercy of the Court.  I put my

7    faith in God, you know, but it's just like it is what it

8    is.  But I do ask for the low end, and I can hope and

9    pray that that's what I get here today.

10             I do have a fiancée and a young daughter and

11   my mother, and I just received news the other day my

12   grandfather passed, so time isn't promised to anybody.

13   You know, at any given moment anything can happen.  You

14   know what I mean?  And just to take and throw away the

15   next 8 to 10 years of my life, 6 to 8, whatever, whatever

16   it may be you see fit to give me, like, that's something

17   I've got to deal with.  I just hope you can be reasonable

18   and, you know, have it in your heart to view me as a

19   person and not just another case number.  I guess that's

20   really all I have to say, Your Honor.

21             THE COURT:  All right.  Thank you, sir.

22             Mr. Tvedt, the government's view, please.

23             MR. TVEDT:  Your Honor, this is where the

24   government was seeking an upward departure or variance

25   based upon the facts and circumstances of this case.  We

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 22 of 40

```
 1   have the defendant at a base level 14.  I should point
 2   out that he has two prior crimes of violence that just
 3   missed being scored under the guidelines, because they
 4   fall just outside the 10-year cap for the new offense.
 5   He was sentenced in January of 2003, at Paragraph 26,
 6   interference with official acts causing injury, which
 7   would be an aggravated misdemeanor, which would be a
 8   felony under the guidelines, a crime of violence.
 9   Eluding or attempting to elude a pursuing police vehicle,
10   that's also a crime of violence.  So he has -- instead of
11   being a 14, he would have been a 24.  His background
12   shows not only the flight from officers and fighting
13   here, but these events that are referenced in the
14   presentence report shows that he has a violent history.
15   He's -- when he was 12, he -- he was -- this is in the
16   presentence report, that he told them that he could have
17   killed a cop that summer -- or the previous summer.  He
18   is fighting with cops when cops are injured, the
19   interference with injury.  The trespass with injury,
20   which was when he was 17, throwing rocks into second
21   floor windows.  We have a violent history with this
22   individual that -- it comes again into the facts of this
23   case, where he is with a weapon, fleeing from law
24   enforcement, and shoots at them.
25              The guideline adjustments that we have, we
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR Document 55 Filed 01/17/14 Page 23 of 40

```
1   have the carrying the weapon in connection with another
2   felony offense.  That's carrying the weapon.  We have
3   the -- putting the law enforcement officers in a
4   substantial risk.  You can get that adjustment just by
5   pointing the firearm or putting them in fear as they are
6   chasing him.  No adjustment in this guideline shows any
7   sanction for actually shooting at law enforcement.
8   That's why I referenced in the -- my sentencing memo,
9   this is not a crime of violence under the guidelines.
10  But if -- you know, if he had possessed the gun, under a
11  924(c), just possessing it would be 5 years.  And
12  discharging it would get a 7 or 10-year sentence in
13  addition to any other crime.
14          This defendant has had a history of fighting
15  with police officers, and we have this latest event where
16  he shoots at police officers.  This is -- I don't know
17  how to emphasize how serious this is.  Our law
18  enforcement every day go out in these situations where
19  they have to find -- protect us on the streets.  And to
20  have these fine young officers basically live in fear,
21  change the way they impact their case -- the way they
22  handle themselves because of the trauma that was caused
23  to them that night by being shot at, I guess what I am
24  trying to say is we need to stand up for our law
25  enforcement.  And that's really not -- we have the
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 24 of 40

1  6-level hit, but we don't have anything in here that says

2  when you shoot at a cop, that somehow -- it should

3  somehow take it outside a guideline range either under a

4  departure or a variance.  And I believe a sentence toward

5  10 years would be more appropriate than something at

6  the -- within that guideline range.

7      And I believe Alex Scott would like to make a

8  brief allocution to the Court.  But I'm seeking --

9  recommending an upward departure or a variance with the

10  most time that we can give this defendant, which would be

11  10 years.

12      THE COURT:  All right, counsel.

13      Officer Scott, do you want to step forward.

14  Why don't you sit up here so you are on the microphone.

15      OFFICER SCOTT:  Okay.

16      THE COURT:  But you won't be interrogated.

17  We'll just let you make a statement.

18      OFFICER SCOTT:  Your Honor, I feel that the

19  defendant has a total disregard for law enforcement and

20  has a trend of violence with law enforcement.  And even

21  with this case, he has yet to accept responsibility for

22  his actions that night.

23      I don't believe that he realizes how close to

24  his own life did he lose [sic] that night, but also the

25  lives that, based on his actions, that he has affected,

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 25 of 40

 1   not only his own, myself, and Officer Brokens, but his

 2   family, I mean, him going away, his mother, if he has any

 3   children or loved ones with that.

 4              THE COURT:  All right.  Thank you, Officer.

 5              The record should reflect I believe I also

 6   have a statement from Officer Brokens in the record.

 7              And I assume you've seen that, Mr. Lindeman.

 8              MR. LINDEMAN:  I have, Your Honor.

 9              THE COURT:  All right.  But Officer Brokens

10   doesn't need to add to that today?

11              OFFICER BROKENS:  No, sir.

12              THE COURT:  All right.  Pursuant to the

13   provisions of Title 18 United States Code Section 3553,

14   in determining the sentence that is appropriate in the

15   case, the Court considers the nature and circumstances of

16   the offense and the history and characteristics of the

17   defendant.  I have considered all of the factors under

18   Section 3553(a), although it may not be necessary to

19   address each of them in explaining the sentence here

20   today.

21              Obviously, this offense is serious on many

22   levels.  First of all, the whole concept behind this

23   statute is that there are certain people for whom

24   possession of a firearm generates an unusual and

25   extraordinary risk.  And, Mr. Campbell, you are such a

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 26 of 40

1  person because of your record.

2         And then on top of that, we have the fact

3  that, in this case -- and as you indicated in your

4  statement, you know that I must accept that you are the

5  guy and that the record is that you fired at these

6  officers.  And that, of course, magnifies the seriousness

7  of the offense significantly.  It is -- I don't know

8  exactly why the officers didn't shoot you, but they could

9  have under the circumstances.  They elected not to, and,

10 rather, elected to pursue you without firing.

11         The Court needs to be concerned about

12 adequate deterrence to criminal conduct, and that is, of

13 course, always true.  It is significantly true in a case

14 involving a situation where law enforcement officers were

15 put in unusual danger.

16         I need to protect the public from further

17 crimes that you might commit.  Your criminal history is

18 significant, although one of the things the Court has to

19 recognize is that up until now, you haven't faced

20 anywhere near the kind of time that you are facing in

21 this case.  Your problems in the past have not gotten you

22 quite to that level for whatever reason.

23         The Court does look to the sentencing

24 guidelines as assistance in trying to figure out what is

25 an appropriate sentence under the circumstances, and I

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR  Document 55  Filed 01/17/14  Page 27 of 40

1  need to avoid unwarranted sentencing disparity among

2  defendants with similar records who have been found

3  guilty of similar conduct.

4          The case that is before me is a possession of

5  a firearm by a person who under the law cannot do so.

6  Judge -- or Officer Brokens mentioned in his statements

7  that he didn't know why you weren't charged with more,

8  but the case that's before me is illegal possession of a

9  firearm, which has a statutory maximum of 120 months.

10         The Court, then, looking at all of the

11  factors in the case, must recognize that to a certain

12  degree the guideline range that was arrived upon in this

13  case was arrived upon considering much of what is

14  significant in this case, not only that the defendant was

15  in possession of a firearm, but that he created an

16  unusually dangerous situation, and that he fired on

17  police officers.  So we get to that range based upon

18  those factors.

19         Then the question becomes, what more is

20  necessary to respond to this particular situation.  It is

21  true that the guideline calculation does not take into

22  consideration the fact that he actually took a shot at

23  you guys, so that is a reasonable factor to consider in

24  deciding what is an appropriate sentence.

25         The Court also has to recognize that there

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR  Document 55  Filed 01/17/14  Page 28 of 40

1   are certain correctional considerations that the Court

2   appropriately can consider and recognizing that this

3   gentleman is going to come back out of prison someday.

4   And when he does, we have to treat him in a fashion now

5   that is consistent with a level of justice that makes

6   some sense.

7                Therefore, I'm going to deny the motion that

8   I sentence above the guideline range, because I think all

9   of the factors in this case would indicate that a

10  sentence at the top of the guideline range is sufficient

11  but not greater than necessary for an appropriate

12  sentence in this case.

13               It by no means diminishes the Court's respect

14  for law enforcement officers or the Court's concern about

15  the danger that you are placed in.  It is simply the

16  Court's reaction to the circumstances of this particular

17  case.

18               I believe a sentence at 97 months is a

19  significant sentence under the circumstances.  And one

20  can only feel fortunate that something more serious

21  didn't happen that night.

22               Will the defendant please rise.  Based upon

23  the Court's review of the criteria set forth in Title 18

24  United States Code Section 3553 and the unique

25  circumstances of this case, it is the judgment of the

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 29 of 40

1  Court that the defendant, Daniel Lee Campbell, is hereby

2  sentenced to the custody of the Bureau of Prisons for a

3  term of 97 months on Count 1 of the indictment.

4          Upon release from imprisonment, you will be

5  placed on supervised release for a term of 3 years.

6  Within 72 hours of release from the custody of the Bureau

7  of Prisons, you are to report in person to the probation

8  office in the district to which you have been released.

9          While you are on supervised release, you're

10  not to commit another federal, state, or local crime.

11  You will be prohibited from possessing a firearm or other

12  destructive device.  And you shall not possess any

13  illegal controlled substances.  You will have to abide by

14  the standard conditions of supervised release as set out

15  by the United States Sentencing Commission, plus the

16  following special conditions:

17          You must participate in and successfully

18  complete a program of testing and treatment for substance

19  abuse.

20          You are prohibited from the use of alcohol,

21  and are prohibited from entering bars, taverns, or other

22  establishments whose primary source of income is derived

23  from the sale of alcohol.

24          You must not knowingly associate with any

25  member, prospect, or associate member of any gang without

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 30 of 40

1  the prior approval of the US Probation Office.  If you

2  are found to be in the company of such individuals while

3  wearing the clothing, colors, or insignia of the gang,

4  the Court will presume that this association was for the

5  purpose of participating in gang activities.

6          You shall have no contact during your term of

7  supervision with the victims identified in Paragraph 7 of

8  the presentence report in person or by a third-party.

9  This includes no direct or indirect contact by telephone,

10  mail, e-mail, or by any other means.

11         And you will be subject to the standard

12  search conditions of this court.  Any search will be

13  based on reasonable suspicion and conducted in a

14  reasonable manner.  The specifics of the condition will

15  be set out in the judgment order.

16         The Court finds you are not able to pay a

17  fine.  You are ordered to pay a $100 special assessment

18  to the Victim's Assistance Fund, which will be due

19  immediately and payable without interest to the US Clerk

20  of Court for the Southern District of Iowa.

21         You may be seated, sir.

22         MR. TVEDT:  Your Honor, should that be to the

23  Northern District of Iowa?

24         THE COURT:  Yes.  I'm sorry, habit.  For the

25  Northern District of Iowa.

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR  Document 55  Filed 01/17/14  Page 31 of 40

1          Mr. Campbell, you have the right to appeal

2    from the sentence that's being imposed today.  You would

3    need to do so within 14 days of the entry of judgment,

4    and I anticipate judgment will be entered yet today.

5          Mr. Lindeman, do you seek any recommendations

6    to the Bureau of Prisons?

7          MR. LINDEMAN:  No, Your Honor.

8          THE COURT:  No placement recommendation?

9    No -- there was some reference to drug issues.  Did

10   you -- actually, I'm not sure he would get any credit for

11   participating in a comprehensive drug program because of

12   the nature of the offense.  But do you wish a

13   recommendation on either one of those things, area of

14   placement or drug program?

15         MR. LINDEMAN:  Yes, he would like to be

16   placed as close to his family in Dubuque as possible, and

17   if he qualifies, he would like to participate in the

18   substance abuse drug treatment program.  Thank you, Your

19   Honor.

20         THE COURT:  All right.  I will make those

21   recommendations:  As close as possible to northeast Iowa,

22   consistent with space and security classification; and I

23   will also recommend his participation in the

24   comprehensive drug treatment program.

25         But as indicated, Mr. Campbell, I don't think

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 32 of 40

```
 1   the Bureau of Prisons will give you any credit for time

 2   off because of the nature of the crime.

 3              Anything else, counsel?

 4              MR. TVEDT:  No, Your Honor.

 5              MR. LINDEMAN:  No, Your Honor.

 6              THE COURT:  All right.  Court's in recess.

 7              (Proceedings concluded at 2:10 p.m.)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 33 of 40

```
1                    C E R T I F I C A T E

2            I, Patrice A. Murray, a Certified Shorthand
     Reporter of the State of Iowa, do hereby certify that at
3    the time and place heretofore indicated, a hearing was
     held before the Honorable James E. Gritzner; that I
4    reported in shorthand the proceedings of said hearing,
     reduced the same to print to the best of my ability by
5    means of computer-assisted transcription under my
     direction and supervision, and that the foregoing
6    transcript is a true record of all proceedings had on the
     taking of said hearing at the above time and place.

7
             I further certify that I am not related to or
8    employed by any of the parties to this action, and
     further, that I am not a relative or employee of any
9    attorney or counsel employed by the parties hereto or
     financially interested in the action.

10
             IN WITNESS WHEREOF, I have set my hand this
11   16th day of January, 2014.

12
             /s/ Patrice A. Murray
13           Patrice A. Murray, CSR, RPR, RMR, FCRR
             United States District Court, NDIA
14           111 Seventh Avenue S.E., Box 4
             Cedar Rapids, Iowa 52401-2101

15

16

17

18

19

20

21

22

23

24

25
```

Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov
to purchase a complete copy of the transcript.
Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 34 of 40

**$**

**$100** [1] - 31:17

**/**

**/s** [1] - 34:12

**1**

**1** [3] - 1:10, 3:5, 30:3
**10** [5] - 8:20, 13:19, 22:15, 25:5, 25:11
**10-year** [2] - 23:4, 24:12
**111** [4] - 1:10, 1:18, 1:24, 34:14
**12** [3] - 2:3, 9:18, 23:15
**120** [1] - 28:9
**13** [1] - 2:4
**13-1010** [2] - 1:4, 3:4
**14** [3] - 23:1, 23:11, 32:3
**15th** [3] - 9:1, 9:2, 14:4
**16th** [1] - 34:11
**17** [1] - 23:20
**18** [2] - 26:13, 29:23
**18th** [1] - 1:17
**1:33** [1] - 1:19

**2**

**2003** [1] - 23:5
**2010** [1] - 21:7
**2013** [3] - 1:18, 8:20, 13:19
**2014** [1] - 34:11
**24** [1] - 23:11
**26** [2] - 20:1, 23:5
**286-2338** [1] - 1:25
**2:10** [1] - 33:7

**3**

**3** [1] - 30:5
**319** [1] - 1:25
**3500** [1] - 1:12
**3553** [2] - 26:13, 29:24
**3553(a** [1] - 26:18

**4**

**4** [2] - 1:24, 34:14
**4-level** [1] - 18:1

**5**

**5** [1] - 24:11
**52401** [1] - 1:10
**52401-2101** [2] - 1:24, 34:14

**52405** [1] - 1:12

**6**

**6** [1] - 22:15
**6-level** [1] - 25:1

**7**

**7** [2] - 24:12, 31:7
**72** [1] - 30:6
**78** [1] - 20:3

**8**

**8** [3] - 2:3, 22:15

**9**

**924(c** [1] - 24:11
**97** [3] - 20:3, 29:18, 30:3

**A**

**abide** [1] - 30:13
**ability** [3] - 11:19, 12:13, 34:4
**able** [1] - 31:16
**abuse** [2] - 30:19, 32:18
**accept** [3] - 6:2, 25:21, 27:4
**accepted** [1] - 21:22
**accounted** [1] - 18:24
**action** [2] - 34:8, 34:9
**actions** [3] - 21:23, 25:22, 25:25
**activated** [2] - 9:10, 14:21
**activities** [1] - 31:5
**acts** [1] - 23:6
**add** [2] - 18:16, 26:10
**addition** [3] - 4:12, 7:24, 24:13
**additional** [3] - 7:3, 7:7, 17:24
**additions** [1] - 3:25
**address** [2] - 4:16, 26:19
**addressed** [1] - 6:25
**adequate** [1] - 27:12
**adjustment** [3] - 18:1, 24:4, 24:6
**adjustments** [1] - 23:25
**affect** [4] - 11:3, 11:6, 11:19, 17:5
**affected** [1] - 25:25
**affirmed** [2] - 8:6, 13:9
**afraid** [1] - 19:3
**aggravated** [1] - 23:7
**ain't** [2] - 21:18, 22:3
**alcohol** [2] - 30:20, 30:23

**Alex** [6] - 2:4, 10:13, 11:2, 12:19, 13:16, 25:7
**ALEX** [1] - 13:8
**alley** [3] - 10:16, 14:10
**allocute** [1] - 7:16
**allocution** [1] - 25:8
**almost** [2] - 14:14, 16:14
**amendment** [1] - 6:5
**AMERICA** [1] - 1:3
**amplifies** [1] - 11:8
**amply** [1] - 19:10
**anticipate** [1] - 32:4
**apologize** [1] - 22:4
**appeal** [2] - 5:21, 32:1
**APPEARANCES** [1] - 1:9
**appeared** [1] - 1:11
**appearing** [1] - 1:12
**applied** [1] - 19:19
**approach** [1] - 11:15
**approached** [1] - 19:5
**approaching** [1] - 12:22
**appropriate** [6] - 20:5, 25:5, 26:14, 27:25, 28:24, 29:11
**appropriately** [1] - 29:2
**approval** [1] - 31:1
**area** [4] - 14:2, 19:14, 21:2, 22:13
**areas** [1] - 20:13
**argue** [1] - 21:19
**argument** [5] - 7:3, 7:7, 17:24, 18:15, 20:13, 21:10
**arrived** [2] - 28:12, 28:13
**assessment** [1] - 31:17
**assistance** [1] - 27:24
**Assistance** [1] - 31:18
**Assistant** [1] - 1:10
**assisted** [1] - 34:5
**associate** [2] - 30:24, 30:25
**association** [1] - 31:4
**assume** [2] - 12:24, 26:7
**attached** [1] - 12:23
**attempting** [1] - 23:9
**ATTORNEY** [1] - 1:10
**Attorney** [1] - 1:10
**attorney** [2] - 1:12, 34:9
**Attorney's** [1] - 4:15
**authority** [1] - 19:16
**Avenue** [5] - 1:10, 1:12, 1:18, 1:24, 34:14
**avoid** [1] - 28:1
**aware** [1] - 17:8
**awareness** [1] - 16:15

**B**

**B-R-O-K-E-N-S** [1] - 8:13
**background** [2] - 20:12, 23:11
**bad** [1] - 22:1
**bar** [1] - 14:19

**bars** [1] - 30:21
**base** [1] - 23:1
**based** [6] - 20:10, 22:25, 25:25, 28:17, 29:22, 31:13
**becomes** [1] - 28:19
**behalf** [3] - 1:11, 1:13, 19:22
**behind** [4] - 10:16, 12:11, 15:18, 26:22
**best** [1] - 34:4
**between** [1] - 14:11
**bit** [3] - 7:21, 10:24, 20:12
**blocking** [1] - 12:12
**blue** [1] - 9:3
**Bluff** [1] - 8:24
**body** [1] - 16:23
**Box** [3] - 1:10, 1:24, 34:14
**brief** [3] - 12:24, 18:19, 25:8
**briefs** [1] - 3:15
**brings** [2] - 6:7, 11:14
**Brokens** [9] - 2:3, 8:2, 8:13, 14:3, 14:8, 26:1, 26:6, 26:9, 28:6
**BROKENS** [2] - 8:5, 26:11
**Bureau** [4] - 30:2, 30:6, 32:6, 33:1
**BY** [3] - 8:10, 12:2, 13:13

**C**

**calculation** [3] - 6:8, 19:21, 28:21
**CAMPBELL** [1] - 1:6
**Campbell** [8] - 3:3, 3:7, 5:6, 21:12, 26:25, 30:1, 32:1, 32:25
**cannot** [1] - 28:5
**cap** [1] - 23:4
**car** [9] - 9:4, 9:6, 10:10, 14:6, 14:16, 14:24, 15:1, 16:25
**carry** [1] - 11:3
**carrying** [2] - 24:1, 24:2
**cars** [1] - 9:12
**case** [22] - 5:25, 18:1, 19:25, 20:21, 22:19, 22:25, 23:23, 24:21, 25:21, 26:15, 27:3, 27:13, 27:21, 28:4, 28:8, 28:11, 28:13, 28:14, 29:9, 29:12, 29:17, 29:25
**cases** [1] - 21:24
**category** [1] - 20:2
**caused** [2] - 21:9, 24:22
**causing** [1] - 23:6
**Cedar** [5] - 1:10, 1:12, 1:18, 1:24, 34:14
**certain** [3] - 26:23, 28:11, 29:1
**certainly** [2] - 7:21, 19:15
**Certified** [1] - 34:2
**certify** [2] - 34:2, 34:7
**challenged** [1] - 10:20
**change** [2] - 17:3, 24:21

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR Document 55 Filed 01/17/14 Page 35 of 40

**changes** [1] - 17:4
**characteristics** [1] - 26:16
**charged** [1] - 28:7
**charges** [3] - 4:16, 4:19, 4:24
**chasing** [3] - 10:15, 16:7, 24:6
**chest** [1] - 10:25
**child** [1] - 21:3
**children** [2] - 26:3
**circumstances** [9] - 19:15, 20:6, 22:25, 26:15, 27:9, 27:25, 29:16, 29:19, 29:25
**citation** [1] - 4:7
**clarify** [1] - 12:22
**classification** [1] - 32:22
**clear** [3] - 19:1, 19:4, 19:6
**clearly** [4] - 9:8, 9:9, 18:8, 19:18
**Clerk** [1] - 31:19
**close** [3] - 25:23, 32:16, 32:21
**clothing** [2] - 19:6, 31:3
**Code** [2] - 26:13, 29:24
**colors** [1] - 31:3
**commencing** [1] - 1:19
**comments** [1] - 17:2
**Commission** [1] - 30:15
**commit** [2] - 27:17, 30:10
**company** [1] - 31:2
**complainant** [1] - 8:25
**complete** [1] - 30:18
**comprehensive** [2] - 32:11, 32:24
**computer** [1] - 34:5
**computer-assisted** [1] - 34:5
**concept** [1] - 26:22
**concern** [2] - 15:17, 29:14
**concerned** [1] - 27:11
**concluded** [1] - 33:7
**condition** [1] - 31:14
**conditions** [3] - 30:14, 30:16, 31:12
**conduct** [2] - 27:12, 28:3
**conducted** [1] - 31:13
**confer** [1] - 5:11
**confirmed** [1] - 21:5
**connection** [5] - 6:11, 7:6, 17:22, 18:10, 24:1
**consider** [2] - 28:23, 29:2
**consideration** [1] - 28:22
**considerations** [1] - 29:1
**considered** [2] - 7:24, 26:17
**considering** [1] - 28:13
**considers** [1] - 26:15
**consistent** [2] - 29:5, 32:22
**constantly** [1] - 11:17
**contact** [3] - 13:25, 31:6, 31:9
**contents** [1] - 5:12
**controlled** [1] - 30:13

**convened** [1] - 3:2
**convicted** [1] - 18:6
**conviction** [1] - 21:19
**convictions** [1] - 6:20
**cop** [2] - 23:17, 25:2
**cops** [2] - 23:18
**corner** [1] - 9:19
**cornered** [1] - 10:8
**correct** [7] - 5:1, 5:22, 5:25, 6:1, 6:13, 10:11, 13:2
**correctional** [1] - 29:1
**counsel** [6] - 3:10, 3:16, 12:22, 25:12, 33:3, 34:9
**counseling** [1] - 11:22
**counselor** [1] - 11:23
**Count** [2] - 3:5, 30:3
**counting** [1] - 18:20, 24:8, 19:1
**course** [7] - 7:17, 27:6, 27:13
**COURT** [51] - 1:1, 3:2, 3:10, 3:14, 3:21, 3:24, 4:5, 4:11, 4:18, 5:2, 5:6, 5:9, 5:14, 5:19, 5:24, 6:2, 6:15, 6:24, 7:2, 7:9, 7:18, 8:3, 8:8, 11:25, 12:16, 12:18, 12:21, 13:3, 13:6, 13:11, 17:11, 17:13, 17:17, 17:20, 18:2, 18:22, 19:9, 19:25, 20:19, 20:23, 21:12, 22:21, 25:12, 25:16, 26:4, 26:9, 26:12, 31:24, 32:8, 32:20, 33:6
**Court** [24] - 1:23, 4:16, 18:5, 19:9, 19:19, 20:2, 20:9, 20:10, 21:11, 21:13, 22:6, 25:8, 26:15, 27:11, 27:18, 27:23, 28:10, 28:25, 29:1, 30:1, 31:4, 31:16, 31:20, 34:13
**court** [5] - 3:1, 4:3, 21:9, 21:21, 31:12
**Court's** [4] - 29:13, 29:14, 29:16, 29:23
**court's** [1] - 33:6
**Courtside** [1] - 21:4
**covers** [1] - 18:1
**CR** [1] - 1:4
**created** [4] - 6:17, 18:13, 19:12, 28:15
**creating** [1] - 19:11
**credit** [2] - 32:10, 33:1
**crime** [6] - 23:8, 23:10, 24:9, 24:13, 30:10, 33:2
**crimes** [2] - 23:2, 27:17
**Criminal** [1] - 3:3
**criminal** [3] - 20:1, 27:12, 27:17
**criteria** [1] - 29:23
**cross** [3] - 9:3, 11:25, 17:11
**CROSS** [1] - 12:1
**cross-examination** [2] - 11:25, 17:11
**CROSS-EXAMINATION** [1] - 12:1

**crossing** [1] - 9:1
**CSR** [2] - 1:23, 34:13
**custody** [2] - 30:2, 30:6

## D

**danger** [3] - 10:6, 27:15, 29:15
**dangerous** [1] - 28:16
**Daniel** [2] - 3:3, 30:1
**DANIEL** [2] - 1:6, 1:10
**date** [1] - 5:25
**daughter** [1] - 22:10
**days** [1] - 32:3
**deal** [3] - 10:5, 11:9, 22:17
**dealing** [1] - 11:7
**dean's** [2] - 20:15, 21:7
**December** [1] - 1:18
**deciding** [1] - 28:24
**Defendant** [2] - 1:7, 1:13
**DEFENDANT** [4] - 3:9, 5:8, 5:13, 21:17
**defendant** [27] - 6:17, 8:20, 8:23, 9:16, 9:23, 10:3, 10:15, 13:25, 14:12, 15:6, 15:11, 16:7, 18:12, 19:5, 19:8, 19:14, 19:22, 20:8, 20:14, 23:1, 24:14, 25:10, 25:19, 26:17, 28:14, 29:22, 30:1
**defendants** [1] - 28:2
**definitely** [1] - 10:19
**degree** [2] - 21:6, 28:12
**demeanor** [1] - 17:4
**demonstrated** [1] - 18:9
**deny** [1] - 29:7
**Department** [3] - 8:15, 9:8, 13:18
**department** [1] - 14:25
**departure** [3] - 22:24, 25:4, 25:9
**derived** [1] - 30:22
**describe** [2] - 15:15, 16:19
**destructive** [1] - 30:12
**determining** [1] - 26:14
**deterrence** [1] - 27:12
**device** [1] - 30:12
**different** [2] - 16:20, 17:3
**differently** [4] - 11:9, 16:23, 16:24
**diminishes** [1] - 29:13
**direct** [2] - 11:24, 31:9
**DIRECT** [2] - 8:9, 13:12
**direction** [1] - 34:5
**disagreement** [2] - 18:4, 18:15
**discharging** [1] - 24:12
**discuss** [1] - 22:3
**discussion** [1] - 12:25
**disparity** [1] - 28:1
**disregard** [1] - 25:19
**District** [6] - 1:23, 4:10,

31:20, 31:23, 31:25, 34:13
**district** [3] - 4:3, 4:21, 30:8
**DISTRICT** [2] - 1:1, 1:1
**door** [1] - 14:14
**double** [3] - 18:20, 18:24, 19:1
**double-counting** [3] - 18:20, 18:24, 19:1
**down** [3] - 10:25, 12:18, 17:13
**dressed** [2] - 9:14, 9:20
**driver's** [1] - 14:14
**driving** [7] - 4:4, 4:16, 4:19, 6:20, 9:2, 9:6, 12:25
**drug** [5] - 32:9, 32:11, 32:14, 32:18, 32:24
**Dubuque** [7] - 8:15, 9:8, 9:15, 13:18, 14:16, 21:2, 32:16
**due** [1] - 31:18
**duly** [2] - 8:6, 13:9
**during** [5] - 6:18, 7:12, 7:17, 18:14, 31:6
**duty** [1] - 17:6

## E

**e-mail** [1] - 31:10
**easily** [1] - 10:19
**either** [3] - 16:3, 25:3, 32:13
**elected** [2] - 27:9, 27:10
**element** [1] - 10:6
**elude** [1] - 23:9
**eluding** [1] - 23:9
**emphasize** [1] - 24:17
**employed** [4] - 20:14, 34:8, 34:9
**employee** [2] - 21:5, 34:8
**encountered** [1] - 8:20
**encountering** [1] - 19:8
**end** [5] - 20:9, 20:17, 22:5, 22:8
**enforcement** [14] - 6:18, 18:13, 19:7, 19:11, 19:13, 23:24, 24:3, 24:7, 24:18, 24:25, 25:19, 25:20, 27:14, 29:14
**enhancement** [6] - 6:10, 18:3, 18:9, 18:20, 19:10, 19:18
**entered** [1] - 32:4
**entering** [1] - 30:21
**entirely** [1] - 21:14
**entry** [1] - 32:3
**error** [2] - 3:21, 5:15
**especially** [1] - 10:7
**essentially** [3] - 18:3, 18:15, 21:10
**establishments** [1] - 30:22
**evening** [1] - 21:9
**event** [4] - 11:22, 16:9,

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 36 of 40

19:12, 24:15
  **events** [2] - 16:25, 23:13
  **evidence** [3] - 7:23, 17:15, 17:18
  **evident** [1] - 7:13
  **exactly** [1] - 27:8
  **examination** [2] - 11:25, 17:11
  **EXAMINATION** [3] - 8:9, 12:1, 13:12
  **examined** [2] - 8:7, 13:10
  **exhibits** [1] - 12:23
  **explaining** [1] - 26:19
  **extraordinary** [1] - 26:25

## F

  **faced** [1] - 27:19
  **facing** [1] - 27:20
  **fact** [6] - 4:21, 13:22, 19:3, 19:14, 27:2, 28:22
  **factor** [1] - 28:23
  **factors** [4] - 26:17, 28:11, 28:18, 29:9
  **facts** [3] - 5:17, 22:25, 23:22
  **factual** [3] - 3:21, 5:15, 6:3
  **faith** [1] - 22:7
  **fall** [1] - 23:4
  **family** [3] - 21:2, 26:2, 32:16
  **far** [1] - 9:16
  **fashion** [1] - 29:4
  **fast** [1] - 12:14
  **FCRR** [2] - 1:23, 34:13
  **fear** [6] - 7:12, 7:15, 15:12, 16:6, 24:5, 24:24
  **federal** [2] - 21:21, 30:10
  **feet** [1] - 9:18
  **felon** [1] - 3:6
  **felony** [8] - 4:8, 6:12, 7:6, 17:22, 18:11, 18:21, 23:8, 24:2
  **felt** [1] - 15:18
  **fiancée** [2] - 21:3, 22:10
  **fighting** [3] - 23:12, 23:18, 24:14
  **figure** [1] - 27:24
  **filed** [1] - 3:16
  **financially** [1] - 34:9
  **findings** [1] - 6:3
  **fine** [2] - 24:20, 31:17
  **fire** [2] - 19:16, 22:2
  **firearm** [16] - 3:5, 6:11, 7:6, 10:5, 11:7, 11:13, 16:14, 17:22, 18:6, 18:10, 24:5, 26:24, 28:5, 28:9, 28:15, 30:11
  **firearms** [3] - 9:25, 10:3, 15:4
  **fired** [3] - 18:7, 27:5, 28:16
  **firing** [1] - 27:10
  **first** [10] - 6:15, 7:5, 8:6,

8:19, 8:22, 13:9, 13:25, 15:8, 15:19, 26:22
  **fit** [1] - 22:16
  **flash** [7] - 10:22, 10:23, 12:3, 12:14, 15:21, 15:25, 16:1
  **flashed** [1] - 12:8
  **flee** [1] - 10:7
  **fleeing** [2] - 10:5, 23:23
  **flight** [3] - 6:18, 18:14, 23:12
  **floor** [1] - 23:21
  **followed** [1] - 4:23
  **following** [2] - 3:1, 30:16
  **follows** [2] - 8:7, 13:10
  **FOR** [1] - 1:1
  **foregoing** [1] - 34:5
  **forget** [1] - 12:22
  **forth** [1] - 29:23
  **fortunate** [1] - 29:20
  **forward** [2] - 13:6, 25:13
  **frank** [1] - 21:18
  **full** [2] - 5:11, 9:15
  **Fund** [1] - 31:18

## G

  **gang** [3] - 30:25, 31:3, 31:5
  **generates** [1] - 26:24
  **gentleman** [2] - 8:4, 29:3
  **given** [1] - 22:13
  **glad** [1] - 21:15
  **God** [1] - 22:7
  **government** [4] - 3:18, 7:9, 7:11, 22:24
  **government's** [1] - 22:22
  **grandfather** [1] - 22:12
  **greater** [1] - 29:11
  **Gritzner** [2] - 1:17, 34:3
  **ground** [1] - 16:4
  **guess** [3] - 11:18, 22:19, 24:23
  **guideline** [13] - 6:8, 19:21, 20:2, 20:9, 20:17, 23:25, 24:6, 25:3, 25:6, 28:12, 28:21, 29:8, 29:10
  **guidelines** [5] - 18:25, 23:3, 23:8, 24:9, 27:24
  **guilty** [2] - 21:19, 28:3
  **gun** [7] - 12:4, 12:6, 12:13, 15:9, 15:10, 16:17, 24:10
  **guy** [1] - 27:5
  **guys** [1] - 28:23

## H

  **habit** [1] - 31:24
  **hand** [6] - 12:5, 12:6, 12:7, 15:10, 34:10
  **handguns** [2] - 10:22, 15:7
  **handle** [2] - 16:9, 24:22
  **handles** [2] - 16:22, 16:23

  **hands** [1] - 11:17
  **harm** [4] - 6:18, 18:13, 19:11, 19:12
  **head** [2] - 12:12, 15:25
  **hear** [3] - 11:12, 16:17, 21:16
  **HEARING** [1] - 1:16
  **hearing** [3] - 34:3, 34:4, 34:6
  **heart** [1] - 22:18
  **held** [3] - 1:17, 3:1, 34:3
  **hereby** [2] - 30:1, 34:2
  **hereto** [1] - 34:9
  **heretofore** [1] - 34:3
  **hesitating** [1] - 10:24
  **history** [6] - 20:1, 23:14, 23:21, 24:14, 26:16, 27:17
  **hit** [4] - 11:1, 16:5, 16:6, 25:1
  **Hon** [1] - 1:17
  **Honor** [43] - 3:12, 3:13, 3:20, 5:1, 5:5, 5:8, 5:13, 5:18, 5:23, 6:1, 6:14, 6:23, 7:1, 7:8, 7:10, 8:1, 11:24, 12:17, 13:2, 13:5, 17:12, 17:16, 17:19, 17:25, 18:19, 18:21, 18:23, 19:23, 19:24, 20:7, 20:16, 20:24, 21:10, 21:17, 22:20, 22:23, 25:18, 26:8, 31:22, 32:7, 32:19, 33:4, 33:5
  **Honorable** [2] - 20:25, 34:3
  **hope** [2] - 22:8, 22:17
  **hours** [1] - 30:6
  **hurt** [1] - 19:3
  **hyper** [1] - 16:14

## I

  **identified** [2] - 18:7, 31:7
  **Ill** [1] - 20:2
  **illegal** [2] - 28:8, 30:13
  **immediately** [2] - 11:14, 31:19
  **impact** [1] - 24:21
  **impacted** [2] - 16:9, 16:12
  **imposed** [2] - 20:10, 32:2
  **imprisonment** [1] - 30:4
  **IN** [2] - 1:1, 34:10
  **incident** [5] - 5:17, 11:3, 11:21, 13:20, 19:4
  **included** [2] - 4:22, 6:20
  **includes** [1] - 31:9
  **including** [1] - 4:7
  **income** [1] - 30:22
  **incorporated** [1] - 4:9
  **INDEX** [1] - 2:1
  **indicate** [1] - 29:9
  **indicated** [4] - 17:21, 27:3, 32:25, 34:3
  **indictment** [1] - 30:3
  **indirect** [1] - 31:9
  **individual** [3] - 18:5, 18:6, 23:22
  **individuals** [2] - 14:4, 31:2

  **injured** [3] - 19:3, 19:4, 23:18
  **injury** [2] - 23:6, 23:19
  **innocent** [1] - 21:19
  **insignia** [1] - 31:3
  **instantly** [1] - 17:4
  **instead** [1] - 23:10
  **intended** [1] - 18:25
  **interest** [1] - 31:19
  **interested** [1] - 34:9
  **interference** [2] - 23:6, 23:19
  **interrogated** [1] - 25:16
  **investigation** [5] - 3:15, 3:19, 5:4, 5:7, 6:3
  **involved** [2] - 11:13, 16:17
  **involving** [3] - 16:13, 17:3, 27:14
  **IOWA** [1] - 1:1
  **Iowa** [11] - 1:10, 1:12, 1:19, 1:24, 14:11, 31:20, 31:23, 31:25, 32:21, 34:2, 34:14
  **issue** [5] - 6:7, 6:9, 6:22, 17:24, 18:12
  **issued** [2] - 9:15, 14:25
  **issues** [3] - 3:24, 19:20, 32:9
  **itself** [2] - 12:4, 12:13

## J

  **James** [2] - 1:17, 34:3
  **January** [2] - 23:5, 34:11
  **John** [3] - 15:17, 15:19, 16:3
  **JONATHAN** [1] - 8:5
  **Jonathan** [3] - 2:3, 8:1, 8:13
  **Judge** [1] - 4:6
  **judge** [1] - 28:6
  **judgment** [4] - 29:25, 31:15, 32:3, 32:4
  **jumpy** [1] - 17:7
  **June** [2] - 8:20, 13:19
  **jury** [1] - 3:5
  **justice** [1] - 29:5

## K

  **kept** [2] - 11:1, 11:2
  **killed** [1] - 23:17
  **kind** [2] - 11:8, 27:20
  **knowingly** [1] - 30:24

## L

  **last** [3] - 8:11, 13:14, 21:1
  **latest** [1] - 24:15
  **law** [15] - 6:18, 18:13, 19:7, 19:11, 19:13, 23:23, 24:3, 24:7, 24:17, 24:24, 25:19, 25:20, 27:14, 28:5, 29:14
  **Law** [1] - 1:12

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*
Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 37 of 40

**lawyers** [1] - 5:10
**Lee** [2] - 3:3, 30:1
**left** [2] - 12:6, 15:19
**legal** [1] - 3:10
**lethal** [1] - 10:8
**letter** [1] - 21:1
**letters** [2] - 20:11, 20:25
**level** [6] - 4:3, 16:16, 20:1, 23:1, 27:22, 29:5
**levels** [1] - 26:22
**life** [3] - 21:8, 22:15, 25:24
**light** [1] - 14:19
**lights** [3] - 9:4, 9:10, 14:7
**Linda** [1] - 21:22
**LINDEMAN** [25] - 1:12, 3:13, 3:14, 4:25, 5:5, 5:16, 5:22, 6:1, 6:13, 6:23, 7:1, 7:8, 12:2, 12:15, 17:12, 17:19, 18:18, 19:22, 20:7, 20:22, 20:24, 26:8, 32:7, 32:15, 33:5
**Lindeman** [13] - 1:12, 4:11, 4:19, 5:2, 5:12, 5:14, 6:10, 17:11, 17:17, 18:15, 20:4, 26:7, 32:5
**list** [3] - 6:15, 20:15, 21:7
**listed** [1] - 4:7
**lit** [1] - 9:19
**live** [1] - 24:20
**lives** [1] - 25:25
**local** [2] - 6:6, 30:10
**look** [1] - 27:23
**looking** [4] - 10:25, 11:1, 11:17, 28:10
**lose** [1] - 25:24
**loud** [1] - 16:1
**loved** [1] - 26:3
**low** [3] - 20:17, 22:5, 22:8
**lower** [1] - 20:9

## M

**magnifies** [1] - 27:6
**mail** [2] - 31:10
**Main** [2] - 14:4, 14:11
**main** [1] - 15:17
**manner** [2] - 19:1, 31:14
**marked** [3] - 9:8, 9:9, 14:17
**material** [4] - 3:17, 4:20, 4:22, 6:21
**materials** [1] - 3:15
**matter** [3] - 3:2, 4:2, 8:16
**matters** [1] - 4:9
**maximum** [1] - 28:9
**mean** [6] - 5:24, 21:17, 21:18, 21:25, 22:14, 26:2
**meaningless** [1] - 4:24
**means** [3] - 29:13, 31:10, 34:5
**member** [2] - 30:25
**memo** [1] - 24:8
**memorandum** [3] - 7:3,

17:23, 18:1
**memories** [1] - 13:24
**mentioned** [2] - 18:18, 28:6
**mercy** [1] - 22:6
**MICHAEL** [1] - 1:12
**microphone** [1] - 25:14
**might** [2] - 11:13, 27:17
**misdemeanor** [2] - 4:8, 23:7
**missed** [2] - 6:16, 23:3
**moment** [2] - 9:2, 22:13
**months** [4] - 20:3, 28:9, 29:18, 30:3
**most** [1] - 25:10
**mother** [5] - 20:11, 21:1, 21:3, 22:11, 26:2
**motion** [1] - 29:7
**MR** [46] - 3:12, 3:13, 3:20, 3:23, 4:2, 4:6, 4:14, 4:25, 5:5, 5:16, 5:22, 6:1, 6:13, 6:23, 7:1, 7:8, 7:10, 8:1, 8:10, 11:24, 12:2, 12:15, 12:17, 12:19, 13:2, 13:5, 13:13, 17:10, 17:12, 17:16, 17:19, 17:25, 18:18, 18:23, 19:22, 19:24, 20:7, 20:22, 20:24, 22:23, 26:8, 31:22, 32:7, 32:15, 33:4, 33:5
**Murray** [4] - 1:23, 34:2, 34:12, 34:13
**must** [5] - 16:5, 27:4, 28:11, 30:17, 30:24
**muzzle** [8] - 10:22, 10:23, 12:3, 12:7, 12:14, 15:21, 15:24, 16:1

## N

**N.W** [1] - 1:12
**name** [4] - 8:11, 8:12, 13:14
**nature** [7] - 5:19, 7:19, 10:4, 20:10, 26:15, 32:12, 33:2
**NDIA** [1] - 34:13
**near** [1] - 27:20
**necessary** [3] - 26:18, 28:20, 29:11
**neck** [1] - 12:12
**need** [10] - 4:12, 6:25, 7:15, 7:22, 13:3, 24:24, 26:10, 27:16, 28:1, 32:3
**needed** [1] - 9:1
**needs** [2] - 7:23, 27:11
**never** [1] - 21:23
**new** [1] - 23:4
**news** [1] - 22:11
**next** [2] - 18:12, 22:15
**night** [11] - 9:14, 9:25, 11:10, 11:14, 14:1, 16:20, 19:8, 24:23, 25:22, 25:24, 29:21
**nights** [1] - 11:20
**northeast** [1] - 32:21
**Northern** [3] - 4:10, 31:23,

31:25
**NORTHERN** [1] - 1:1
**noted** [1] - 5:16
**nothing** [3] - 12:15, 12:17, 17:10
**Number** [1] - 3:3
**number** [3] - 4:8, 4:9, 22:19

## O

**oath** [2] - 7:22, 8:4
**object** [1] - 6:10
**objections** [4] - 5:17, 5:20, 6:9, 6:25
**observant** [1] - 11:18
**observation** [1] - 12:4
**observe** [1] - 12:13
**obviously** [2] - 20:7, 26:21
**OF** [2] - 1:1, 1:3
**offense** [12] - 6:12, 7:6, 17:22, 18:8, 18:11, 20:1, 23:4, 24:2, 26:16, 26:21, 27:7, 32:12
**offenses** [1] - 13:1
**offer** [1] - 13:3
**office** [1] - 30:8
**Office** [2] - 4:15, 31:1
**officer** [6] - 8:3, 8:19, 8:24, 12:3, 12:21, 14:3
**Officer** [10] - 12:18, 13:7, 14:8, 17:14, 25:13, 26:1, 26:4, 26:6, 26:9, 28:6
**OFFICER** [3] - 25:15, 25:18, 26:11
**officers** [17] - 6:18, 7:12, 18:7, 18:14, 19:2, 19:7, 19:15, 23:12, 24:3, 24:15, 24:16, 24:20, 27:6, 27:8, 27:14, 28:17, 29:14
**official** [1] - 23:6
**once** [1] - 21:23
**One** [1] - 1:12
**one** [6] - 6:19, 7:4, 10:19, 27:18, 29:19, 32:13
**ones** [1] - 26:3
**open** [1] - 3:1
**opportunity** [3] - 3:18, 5:3, 5:11
**order** [3] - 4:21, 4:22, 31:15
**ordered** [2] - 4:6, 31:17
**outside** [3] - 9:17, 23:4, 25:3
**own** [2] - 25:24, 26:1

## P

**p.m** [2] - 1:19, 33:7
**pain** [1] - 16:5
**Paragraph** [2] - 23:5, 31:7
**parallel** [1] - 14:14
**participate** [2] - 30:17, 32:17

**participating** [2] - 31:5, 32:11
**participation** [1] - 32:23
**particular** [4] - 18:3, 19:17, 28:20, 29:16
**parties** [2] - 34:8, 34:9
**partner** [3] - 10:10, 10:17, 15:13
**party** [1] - 31:8
**passed** [1] - 22:12
**past** [1] - 27:21
**Patrice** [4] - 1:23, 34:2, 34:12, 34:13
**pay** [2] - 31:16, 31:17
**payable** [1] - 31:19
**people** [2] - 17:1, 26:23
**person** [8] - 10:20, 17:3, 18:7, 22:19, 27:1, 28:5, 30:7, 31:8
**place** [3] - 8:4, 34:3, 34:6
**placed** [5] - 7:12, 14:3, 29:15, 30:5, 32:16
**placement** [2] - 32:8, 32:14
**plainly** [1] - 14:17
**Plaintiff** [1] - 1:4
**plea** [1] - 21:20
**plus** [1] - 30:15
**point** [6] - 7:16, 10:21, 15:16, 15:23, 20:16, 23:1
**pointing** [1] - 24:5
**Police** [3] - 8:15, 9:8, 13:18
**police** [10] - 9:15, 14:25, 21:8, 22:1, 22:2, 22:4, 23:9, 24:15, 24:16, 28:17
**police-issued** [1] - 9:15
**position** [4] - 5:20, 11:4, 12:4, 16:10
**possess** [1] - 30:12
**possessed** [1] - 24:10
**possessing** [2] - 24:11, 30:11
**possession** [10] - 3:5, 6:11, 7:5, 17:21, 18:6, 18:10, 26:24, 28:4, 28:8, 28:15
**possible** [2] - 32:16, 32:21
**pray** [2] - 20:8, 22:9
**prepared** [1] - 12:23
**present** [2] - 7:11, 17:18
**presentence** [10] - 3:14, 3:19, 4:10, 4:17, 5:3, 5:7, 6:3, 23:14, 23:16, 31:8
**presenting** [1] - 7:19
**presents** [1] - 19:25
**preserving** [1] - 5:20
**presume** [1] - 31:4
**pretty** [1] - 7:13
**previous** [1] - 23:17
**primary** [1] - 30:22
**print** [1] - 34:4
**prison** [1] - 29:3
**Prisons** [4] - 30:2, 30:7,

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR Document 55 Filed 01/17/14 Page 38 of 40

32:6, 33:1
**Probation** [2] - 4:6, 31:1
**probation** [1] - 30:7
**problems** [1] - 27:21
**proceed** [1] - 20:23
**proceeding** [2] - 7:13, 7:17
**Proceedings** [1] - 33:7
**proceedings** [2] - 34:4, 34:6
**process** [1] - 7:21
**profusely** [1] - 16:22
**program** [5] - 30:18, 32:11, 32:14, 32:18, 32:24
**prohibited** [3] - 30:11, 30:20, 30:21
**promised** [1] - 22:12
**pronounced** [1] - 3:11
**prospect** [1] - 30:25
**protect** [2] - 24:19, 27:16
**provide** [1] - 7:21
**provided** [1] - 4:15
**provides** [1] - 20:2
**providing** [1] - 7:20
**provisions** [1] - 26:13
**public** [1] - 27:16
**pull** [1] - 11:15
**pulled** [2] - 10:10, 15:1
**purpose** [1] - 31:5
**purposes** [4] - 3:4, 4:23, 5:21, 6:4
**pursuant** [2] - 6:5, 26:12
**pursue** [1] - 27:10
**pursuing** [1] - 23:9
**put** [4] - 7:14, 21:25, 22:6, 27:15
**putting** [2] - 24:3, 24:5

## Q

**qualifies** [1] - 32:17
**questions** [1] - 17:12
**quite** [1] - 27:22

## R

**radio** [1] - 14:3
**ran** [4] - 9:23, 15:1, 21:8, 22:1
**range** [10] - 6:8, 19:21, 20:3, 20:9, 25:3, 25:6, 28:12, 28:17, 29:8, 29:10
**Rapids** [5] - 1:10, 1:12, 1:18, 1:24, 34:14
**rather** [1] - 27:10
**RC** [1] - 2:2
**RD** [1] - 2:2
**react** [2] - 16:24, 16:25
**reaction** [1] - 29:16
**read** [2] - 5:6, 7:2
**Reade** [2] - 4:6, 21:22
**realizes** [1] - 25:23

**really** [2] - 22:20, 24:25
**reason** [2] - 3:11, 27:22
**reasonable** [4] - 22:17, 28:23, 31:13, 31:14
**reasons** [1] - 20:16
**received** [1] - 22:11
**recently** [1] - 4:3
**recess** [1] - 33:6
**recognize** [3] - 27:19, 28:11, 28:25
**recognizing** [1] - 29:2
**recommend** [1] - 32:23
**recommendation** [2] - 32:8, 32:13
**recommendations** [2] - 32:5, 32:21
**recommending** [1] - 25:9
**record** [14] - 4:12, 5:25, 7:24, 8:12, 13:15, 18:9, 18:11, 19:10, 19:18, 26:5, 26:6, 27:1, 27:5, 34:6
**records** [1] - 28:2
**red** [1] - 9:3
**redirect** [1] - 12:16
**reduced** [1] - 34:4
**reference** [1] - 32:9
**referenced** [2] - 23:13, 24:8
**reflect** [1] - 26:5
**refresh** [1] - 13:24
**regard** [4] - 7:5, 12:25, 17:21, 19:20
**regarding** [2] - 4:4, 4:17, 5:17
**regards** [3] - 4:15, 18:20, 20:12
**related** [2] - 3:15, 34:7
**relative** [1] - 34:8
**release** [5] - 30:4, 30:5, 30:6, 30:9, 30:14
**released** [1] - 30:8
**relying** [1] - 17:23
**remember** [3] - 10:24, 11:1
**remind** [1] - 8:22
**report** [15] - 3:15, 3:19, 3:22, 4:1, 4:17, 5:4, 5:7, 5:12, 5:15, 6:3, 6:5, 23:14, 23:16, 30:7, 31:8
**reported** [1] - 34:4
**Reporter** [1] - 34:2
**reports** [1] - 4:10
**resolve** [1] - 19:20
**resolved** [3] - 4:3, 6:21, 12:24
**respect** [1] - 29:13
**respectfully** [1] - 20:8
**respond** [1] - 28:20
**response** [2] - 18:2, 18:22
**responsibility** [2] - 21:23, 25:21
**Restaurant** [1] - 21:4
**result** [2] - 3:4, 3:8

**return** [1] - 19:16
**review** [3] - 3:19, 5:3, 29:23
**reviewed** [1] - 3:14
**riders** [1] - 17:1
**riding** [1] - 17:1
**rise** [2] - 16:16, 29:22
**risk** [6] - 6:18, 18:13, 19:11, 19:12, 24:4, 26:25
**RMR** [2] - 1:23, 34:13
**rocks** [1] - 23:20
**RPR** [2] - 1:23, 34:13
**rule** [1] - 6:6
**run** [2] - 15:7, 15:11
**running** [8] - 10:4, 10:20, 11:1, 11:2, 14:7, 15:9, 16:4, 22:4

## S

**S-C-O-T-T** [1] - 13:16
**S.E** [4] - 1:10, 1:18, 1:24, 34:14
**safety** [1] - 15:12
**sale** [1] - 30:23
**sanction** [1] - 24:7
**saw** [9] - 9:2, 10:2, 10:22, 10:23, 12:3, 15:4, 15:6, 15:11
**scared** [1] - 10:21
**scene** [1] - 8:19
**school** [2] - 20:15, 21:6
**scored** [2] - 18:25, 23:3
**Scott** [7] - 2:4, 10:13, 12:20, 12:21, 13:16, 25:7, 25:13
**SCOTT** [3] - 13:8, 25:15, 25:18
**search** [1] - 31:12
**seat** [2] - 8:8, 13:11
**seated** [2] - 5:9, 31:21
**second** [1] - 23:20
**Section** [3] - 26:13, 26:18, 29:24
**security** [1] - 32:22
**see** [6] - 9:19, 9:25, 12:14, 14:6, 15:9, 22:16
**seeing** [1] - 15:21
**seek** [1] - 32:5
**seeking** [2] - 22:24, 25:8
**sense** [2] - 16:14, 29:6
**senses** [1] - 11:9
**sentence** [15] - 3:11, 20:5, 20:21, 24:12, 25:4, 26:14, 26:19, 27:25, 28:24, 29:8, 29:10, 29:12, 29:18, 29:19, 32:2
**sentenced** [2] - 23:5, 30:2
**Sentencing** [1] - 30:15
**sentencing** [8] - 3:4, 3:8, 4:23, 20:3, 20:17, 24:8, 27:23, 28:1
**SENTENCING** [2] - 1:5, 1:16
**separately** [1] - 18:24

**serious** [3] - 24:17, 26:21, 29:20
**seriously** [1] - 19:3
**seriousness** [1] - 27:6
**set** [4] - 29:23, 30:14, 31:15, 34:10
**Seventh** [4] - 1:10, 1:18, 1:24, 34:14
**several** [1] - 11:20
**shall** [2] - 30:12, 31:6
**shoot** [3] - 15:19, 25:2, 27:8
**shooting** [1] - 24:7
**shoots** [2] - 23:24, 24:16
**Shorthand** [1] - 34:2
**shorthand** [1] - 34:4
**shot** [10] - 7:14, 10:7, 10:18, 10:20, 15:17, 15:24, 16:2, 16:3, 24:23, 28:22
**shoulder** [1] - 12:9
**shows** [3] - 23:12, 23:14, 24:6
**sic** [1] - 25:24
**side** [1] - 14:14
**significant** [3] - 27:18, 28:14, 29:19
**significantly** [2] - 27:7, 27:13
**similar** [2] - 28:2, 28:3
**simple** [1] - 4:8
**simply** [3] - 7:20, 7:22, 29:15
**sit** [1] - 25:14
**situation** [7] - 10:9, 18:19, 19:17, 22:1, 27:14, 28:16, 28:20
**situations** [1] - 24:18
**sleep** [2] - 11:19, 11:21
**someday** [1] - 29:3
**somewhat** [1] - 7:18
**sorry** [1] - 31:24
**sound** [2] - 15:25, 16:1
**source** [1] - 30:22
**Southern** [1] - 31:20
**space** [1] - 32:22
**special** [2] - 30:16, 31:17
**specifics** [1] - 31:14
**spell** [2] - 8:11, 13:14
**spot** [1] - 13:25
**spotted** [1] - 8:22
**squad** [8] - 9:6, 9:12, 10:10, 14:5, 14:6, 14:16, 15:1, 16:24
**stand** [4] - 7:25, 8:2, 21:20, 24:24
**standard** [3] - 4:21, 30:14, 31:11
**start** [1] - 4:7
**State** [1] - 34:2
**state** [3] - 8:11, 13:14, 30:10
**statement** [7] - 5:22, 6:13, 7:20, 7:23, 25:17, 26:6, 27:4
**statements** [2] - 4:13, 28:6
**STATES** [2] - 1:1, 1:3

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 39 of 40

**States** [8] - 1:11, 1:23, 3:3, 12:19, 26:13, 29:24, 30:15, 34:13
**statute** [1] - 26:23
**statutory** [1] - 28:9
**stay** [1] - 5:9
**step** [3] - 12:18, 17:13, 25:13
**still** [2] - 6:22, 21:20
**stood** [1] - 15:25
**stop** [2] - 14:9, 14:12
**stopped** [2] - 9:1, 14:13
**stopping** [2] - 14:4, 14:6
**straighten** [1] - 21:7
**Street** [3] - 8:24, 9:1, 9:2
**street** [1] - 9:3
**streets** [1] - 24:19
**stress** [2] - 11:12, 16:16
**subject** [3] - 13:20, 14:7, 31:11
**subjects** [2] - 9:1, 9:3
**submitted** [1] - 20:25
**substance** [2] - 30:18, 32:18
**substances** [1] - 30:13
**substantial** [5] - 6:17, 18:13, 19:11, 19:12, 24:4
**successfully** [1] - 30:17
**sufficient** [1] - 29:10
**Suite** [1] - 1:12
**summarize** [1] - 6:25
**summer** [2] - 23:17
**supervised** [3] - 30:5, 30:9, 30:14
**supervision** [2] - 31:7, 34:5
**supplement** [1] - 4:14
**support** [1] - 21:2
**supported** [1] - 19:18
**supports** [1] - 19:10
**surroundings** [1] - 17:8
**suspension** [1] - 6:20
**suspicion** [1] - 31:13
**sustained** [1] - 18:11
**sweating** [1] - 16:22
**sworn** [3] - 7:25, 8:6, 13:9

## T

**taverns** [1] - 30:21
**telephone** [1] - 31:9
**term** [3] - 30:3, 30:5, 31:6
**testified** [6] - 8:7, 8:16, 9:22, 13:10, 13:22, 15:3
**testimony** [4] - 7:11, 7:14, 7:15, 19:2
**testing** [1] - 30:18
**THE** [56] - 1:1, 1:1, 3:2, 3:9, 3:10, 3:14, 3:21, 3:24, 4:5, 4:11, 4:18, 5:2, 5:6, 5:8, 5:9, 5:13, 5:14, 5:19, 5:24, 6:2, 6:15, 6:24, 7:2, 7:9, 7:18, 8:3, 8:8, 11:25, 12:16, 12:18, 12:21, 13:3, 13:6, 13:11,

17:11, 17:13, 17:17, 17:20, 18:2, 18:22, 19:9, 19:25, 20:19, 20:23, 21:12, 21:17, 22:21, 25:12, 25:16, 26:4, 26:9, 26:12, 31:24, 32:8, 32:20, 33:6
**themselves** [1] - 24:22
**therefore** [4] - 18:5, 18:8, 18:9, 29:7
**thinking** [5] - 10:17, 10:19, 15:6, 15:15, 15:23
**third** [2] - 6:19, 31:8
**third-party** [1] - 31:8
**thoughts** [1] - 20:4
**three** [1] - 21:22
**throw** [1] - 22:14
**throwing** [1] - 23:20
**thrown** [1] - 12:6
**Title** [2] - 26:13, 29:23
**today** [15] - 3:11, 4:20, 4:23, 6:4, 6:21, 7:19, 13:4, 19:2, 21:3, 21:9, 22:9, 26:10, 26:20, 32:2, 32:4
**took** [2] - 21:23, 28:22
**top** [2] - 27:2, 29:10
**total** [1] - 25:19
**touching** [1] - 10:25
**toward** [1] - 25:4
**towards** [1] - 21:6
**traffic** [1] - 4:7
**transcript** [1] - 34:6
**transcription** [1] - 34:5
**trauma** [1] - 24:22
**treat** [1] - 29:4
**treatment** [3] - 30:18, 32:18, 32:24
**trend** [1] - 25:20
**trespass** [1] - 23:19
**trial** [7] - 8:16, 9:22, 13:20, 13:22, 15:3, 21:21, 21:24
**true** [4] - 27:13, 28:21, 34:6
**trying** [4] - 10:7, 21:7, 24:24, 27:24
**turned** [3] - 9:3, 10:20, 15:18
**turning** [1] - 14:6
**TVEDT** [23] - 1:10, 3:12, 3:20, 3:23, 4:2, 4:6, 7:10, 8:1, 8:10, 11:24, 12:17, 12:19, 13:2, 13:5, 13:13, 17:10, 17:16, 17:25, 18:23, 19:24, 22:23, 31:22, 33:4
**Tvedt** [4] - 17:15, 17:23, 18:22, 22:22
**two** [8] - 6:22, 6:24, 7:12, 8:25, 10:3, 10:15, 14:4, 23:2
**type** [2] - 11:22, 14:15
**typical** [1] - 9:12

## U

**under** [16] - 7:22, 8:4, 11:12,

19:14, 20:5, 23:3, 23:8, 24:9, 24:10, 25:3, 26:17, 27:9, 27:25, 28:5, 29:19, 34:5
**underlying** [2] - 12:25, 18:8
**unfortunately** [2] - 21:8, 21:25
**uniform** [2] - 9:15, 14:25
**unique** [1] - 29:24
**UNITED** [2] - 1:1, 1:3
**United** [8] - 1:11, 1:23, 3:3, 12:19, 26:13, 29:24, 30:15, 34:13
**unusual** [2] - 26:24, 27:15
**unusually** [1] - 28:16
**unwarranted** [1] - 28:1
**up** [6] - 9:2, 10:10, 21:14, 24:24, 25:14, 27:19
**upward** [2] - 22:24, 25:9
**US** [4] - 1:10, 4:15, 31:1, 31:19

## V

**variance** [3] - 22:24, 25:4, 25:9
**vehicle** [6] - 9:17, 9:20, 14:9, 14:13, 14:15, 23:9
**vehicles** [2] - 11:15, 19:6
**verdict** [5] - 3:5, 3:8, 18:4, 18:16
**versus** [1] - 3:3
**victim** [1] - 7:20
**Victim's** [1] - 31:18
**victims** [2] - 7:16, 31:7
**view** [3] - 12:12, 22:18, 22:22
**violations** [1] - 4:4
**violence** [5] - 23:2, 23:8, 23:10, 24:9, 25:20
**violent** [2] - 23:14, 23:21
**VS** [1] - 1:5

## W

**ways** [3] - 11:6, 12:11, 16:12
**weapon** [5] - 11:8, 16:14, 23:23, 24:1, 24:2
**weapons** [1] - 17:3
**wearing** [2] - 14:23, 31:3
**week** [1] - 21:1
**WHEREOF** [1] - 34:10
**whole** [1] - 26:22
**windows** [1] - 23:21
**wish** [4] - 17:17, 17:24, 18:16, 32:12
**WITNESS** [2] - 2:2, 34:10
**witness** [2] - 8:6, 13:9

## Y

**years** [5] - 22:15, 24:11,

25:5, 25:11, 30:5
**young** [2] - 22:10, 24:20
**yourself** [2] - 5:7, 21:13

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov*
*to purchase a complete copy of the transcript.*

Case 2:13-cr-01010-CJW-MAR   Document 55   Filed 01/17/14   Page 40 of 40